UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS LANZETTA et al., | ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | No. 24 C 11404 |
| 11902 LONGWOOD LLC, et al., | ) ) | Chief Judge Virginia M. Kendall |
| *Defendants*. | ) ) ) | |

**OPINION AND ORDER**

Plaintiff Thomas Lanzetta alleges Defendants[1] conducted a fraudulent real estate scheme and tricked Lanzetta into purchasing real estate through a series of misrepresentations about the property. Lanzetta brings one claim against Defendant Robert Rixer, alleging that he violated the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962(d). Pending before the Court is Rixer's Motion to Dismiss Count I of Plaintiffs' Second Amended Complaint. (Dkt. 45). For the reasons below, the Court denies Rixer's Motion to Dismiss [45].

**BACKGROUND**

Plaintiff Thomas Lanzetta is a young professional, who lives in California and sought to invest his savings in real estate. (Dkt. 9 ¶ 25). In November 2021, Lanzetta responded to a social media advertisement for CitiPoint Properties ("CitiPoint"), which held itself out as a real estate investment firm that connects investors with the owners of "undervalued and underperforming

---

[1] Defendants include the following natural persons and businesses: 11902 Longwood LLC; TCF National Holdings, INC.; Marcin Chojnacki; Kathleen Long; Chase Real Estate LLC; Midwest Title and Closing Services LLC; Mainstreet Property Management LLC; EJ Investment Group INC.; Illinois Assets LLC; XYZABC, INC.; Citypoint Illinois LLC; Robert Rixer; Rachel Irwin; and BLM Title Services, LLC (doing business as Lakeland Title Services). (Dkt. 9).

1

'off-market' properties" and thereby offered investors the opportunity to purchase " 'directly sourced' properties." (*Id.* at ¶¶ 16, 26–29; Dkt. 9-3).

At the time, CitiPoint was an "unincorporated enterprise," organized by Chojnacki, that appeared to be a real-estate investment firm. (Dkt. 9 ¶ 16). Later, on December 28, 2022, CitiPoint reorganized as Defendant Citypoint Illinois, LLC ("CitiPoint"), which is solely owned by Defendants Robert Rixer and Chojnacki. (*Id.*) As of January 2023, CitiPoint's website listed Chojnacki and Rixer as CitiPoint's managing directors and Lori Mikosz as a member of the investment sales team. (Dkt. 9-1 at 1). Rixer and Chojnacki are also the two sole members of Defendant Illinois Assets LLC, (Dkt. 9 ¶ 8), and were the two sole members of Defendant Mainstreet Property Management, a terminated Illinois limited liability company. (*Id.* at ¶ 14). Additionally, Rixer and Chojnacki are the sole owners of Defendant EJ Investment Group, a Delaware corporation whose principal place of business is in Illinois. (Dkt. 9 ¶ 15). In addition to their roles at CitiPoint, both Mikosz and Chojnacki worked as real estate agents at Chase Real Estate. (Dkt. 9-2 at 1–3). Chojnacki, Mikosz, Rixer, and other defendants operated out of the same office. (Dkt. 9 ¶ 81).

Lori Mikosz, a CitiPoint investment sales representative, responded to Lanzetta's inquiry, and the two engaged in "sustained email, text[,] and phone interactions through the spring and summer of 2022 . . . ." (*Id.* at ¶ 30; Dkt. 9-1 at 1–2). Mikosz told Lanzetta that because she and Chojnacki were agents of Defendant Chase Real Estate, and because "CitiPoint is affiliated with Chase Real Estate, that the transactions would be safely negotiated and consummated under the auspices of Chase Real Estate." (Dkt. 9 ¶ 32). Mikosz also told Lanzetta that "if he invested with CitiPoint, he would be directly purchased buildings that were underperforming because they were owned and self-managed by local landlords . . . [,]" whom Mikosz described as elderly. (*Id.* at ¶

2

34). Ultimately, Lanzetta alleges that Mikosz assured him that "purchasing [real estate] directly from a local, unprofessional landlord" meant that the property could be purchased at a lower price and that "once the property was managed properly (with the help of [Rixer] and Chojnacki's affiliate property management company, Mainstreet Management[], the investor (Thomas) could expect substantial cash flow and rapidly increasing equity." (*Id.* at ¶ 35). Lanzetta, however, asserts that the properties marketed and controlled by Defendants "were actually owned by entities controlled by Defendants — acquired just prior to [Lanzetta's] acquisition for significantly less [than] what [Lanzetta] paid." (*Id.* at ¶ 36).

On January 13, 2022, Lanzetta agreed to a contract with Defendant TCF National Holdings, Inc.—an Illinois corporation solely owned by Chojnacki's "paramour[]" Defendant Kathleen Long—for the purchase of a five-unit apartment building located at 11902 Longwood Dr, Blue Island, Illinois ("the Longwood Property"), for the price of 385,000. (*Id.* at ¶¶ 6, 37; Dkt. 9-7; Dkt. 9-8). On the day prior, January 12, 2022, Mikosz emailed Lanzetta information about the Longwood Property, representing that the property was "presently owned by a[n] elderly landlord who was retiring . . . [,]" in good condition, and fully leased with tenants who were current on their rent. (Dkt. 9 ¶¶ 39–40; Dkt. 9-4). Mikosz further directed Lanzetta to "a CitiPoint Property Information Portal . . . that provided a detailed cash flow analysis supporting the proposition that the Longwood Property would be profitable at the purchase price of $385,000" and that "the property's then-current value [was] significantly higher than [the] office price . . . ." (Dkt. 9 ¶¶ 42–43). Lanzetta further alleges that the CitiPoint Property Information Portal contained a fabricated rent roll representing that the Longwood Property was fully leased and current in rent, when in reality the property was in distress due to delinquent tenants. (Dkt. 9 ¶ 47).

But contemporaneously with Mikosz's communications with Lanzetta about the Longwood Property, Defendants Chojnacki, Rixer, and Kathleen Long "were actively engaged in the purchase of the property themselves from the true current local landlord." (*Id.* at ¶ 45). On March 1, 2022, Defendant 11902 Longwood LLC, an Illinois limited liability company that was wholly owned by Chojnacki and Rixer's Illinois Assets LLC, acquired the Longwood Property for $280,000. (*Id.* at ¶¶ 7, 46, 60; Dkt. 9-6). Pursuant to the addendum to the purchase contract, 11902 Longwood LLC took the place of TCF National Holdings as the seller. (Dkt. 9-8). On March 22, 2022, Illinois Assets LLC, pursuant to a resolution signed by Rixer and Chojnacki, authorized 11902 Longwood LLC to sell the Longwood Property, pursuant to the purchase contract with Lanzetta, for a purchase price of $385,000. (Dkt. 9-5; Dkt. 9-7; Dkt. 9-8). The same day, 11902 Longwood LLC granted the deed to Bowser Rental LLC, an Illinois limited liability company with the same address as Lanzetta. (Dkt. 9-10 at 1; Dkt. Dkt. 9-7 at 3; Dkt. 9 ¶ 59).

Throughout the negotiations regarding the Longwood Property and in solicitations for other properties, Mikosz and Chojnacki identified themselves as Lanzetta's real estate agents. (Dkt. 9 ¶ 69). According to Lanzetta, Mikosz knew, contrary to her representations, that the information in the CitiPoint Property Information Portal was false, that Lanzetta would not be purchasing the Longwood Property from an elderly, local landlord, that Lanzetta would be purchasing the property from an entity controlled by Chojnacki and Rixer, and that property was in poor condition and not fully leased. (Dkt. 9 ¶¶ 47–53, 70–75). Chojnacki and Rixer never disclosed to Lanzetta, a CitiPoint client, that Chojnacki and Rixer were actively purchasing and ultimately purchased the Longwood Property while Chojnacki and Mikosz were negotiating and formalizing the sale of the property to Lanzetta. (*Id.* at ¶ 82). Due to tenant delinquency, uncollectable rents, and "actively

4

concealed building code violations requiring repair in order to allow legal occupancy," Lanzetta has not received a return on his investment. (*Id.* at ¶ 67).

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570 (7th Cir. 2023) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.' " *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[,]" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

For claims sounding in fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to "state with particularly the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, a plaintiff must "describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.' " *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).

## DISCUSSION

In Count I, Plaintiff alleges that Rixer violated § 1962(d) by conspiring to violate § 1962(c).[2] 18 U.S.C. §§ 1962(c), (d); (Am. Compl., Dkt. 9 ¶¶ 103–15). Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To state a claim under § 1962(d), a plaintiff "must allege that the defendant (1) agreed to maintain an interest in or control of an enterprise, or to participate in an enterprise's affairs, (2) through a pattern of racketeering activity, and (3) that the defendant agreed that some member of the conspiracy (not necessarily the defendant herself) would commit at least two predicate acts in furtherance of those goals." *Domanus v. Locke Lord LLP*, 847 F.3d 469, 479 (7th Cir. 2017) (citing *DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011)); *Salinas v. United States*, 522 U.S. 52, 64 (1997).

Lanzetta alleges that Rixer violated § 1962(d) by knowingly agreeing to participate in the conduct of the affairs of the "CitiPoint Enterprise"—an alleged organization of individuals and businesses associated in fact and engaged in continuing real estate fraud—and to facilitate the efforts of its members, including Chojnacki, Mikosz, Long, Citypoint Illinois LLC, 11902 Longwood LLC, and Illinois Assets LLC, to violate § 1962(c). (Dkt. 9 ¶¶ 92–106). Before diving into the RICO allegations, it is worth noting that the complaints in the fifteen related cases pending before this Court—all describing the same RICO conspiracy and RICO enterprise comprised of the same or similar defendants[3]—give Plaintiffs' claims a plausibility boost. *See Pirelli Armstrong*

---

[2] Plaintiff does not allege that Rixer violated § 1962(c). (Second Am. Compl., Dkt. 9 ¶¶ 92–102).
[3] *See* Am. Complaint, *Malik v. Prairie Rainor LLC*, No. 23-cv-01182, (Dkt. 5); Am. Complaint, *Shankar v. Fairview Avenue Properties, LLC*, No. 23-cv-01469, (Dkt. 140); Am. Complaint, *Haynes v. Fairview Avenue Properties, LLC*, No. 23-cv-01596, (Dkt. 27); Am. Complaint, *Abbas v. Mikosz*, No. 23-cv-01691 (Dkt. 133); Am. Complaint, *Sor v. TCF National Holdings, Inc.*, No. 23-cv-02401, (Dkt. 101); Am. Complaint, *Chen v. Chojnacki*, No. 23-cv-02520, (Dkt. 106); Am. Complaint, *Michel v. Chojnacki*, No. 23-cv-02546, (Dkt. 110); Complaint, *Said v. Chojnacki*, No.

*Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) ("It is appropriate to accord limited corroborative weight to allegations in another's lawsuit.").

Rixer argues that Plaintiff fails to state a plausible RICO conspiracy claim because he alleges nothing more than "mere association with an alleged RICO enterprise[.]" (Dkt. 45 at 3). In so arguing, Rixer does not meaningfully contest the plausibility of the asserted RICO conspiracy but solely the plausibility of Rixer's participation in the conspiracy. Plaintiff, however, alleges not merely Rixer's association with the alleged RICO enterprise, but the existence of close working relationships and economic interdependence (including shared ownership of the subject real estate) between Rixer and Chojnacki, as well as a pattern of coordinated actions by Rixer, Chojnacki, Mikosz, Long, and others in furtherance of the alleged conspiracy, including the purchase and sale of the Longwood Property.

As managing director of CitiPoint, Rixer was plausibly aware of CitiPoint's advertisements holding itself out as a real estate investment firm that connects investors with the owners of "undervalued and underperforming 'off-market' properties" and offers the opportunity to purchase " 'directly sourced' properties." (*Id.* at ¶¶ 16, 26–29; Dkt. 9-3). As one of two members of Illinois Assets LLC who authorized the sale of the Longwood Property (via his partial ownership of and 1902 Longwood LLC with Chojnacki), Rixer was also very plausibly aware of the condition of the Longwood Property, the disparity between the actual market value of the Longwood Property and the purchase price, and the information about the Longwood Property that CitiPoint maintained in its portal. Rixer's role as managing director of CitiPoint combined with his

---

23-cv-02858, (Dkt. 2); Am. Complaint, *Stafford v. Chojnacki*, No. 23-cv-03173, (Dkt. 102); Complaint, *Hui v. Chojnacki*, No. 23-cv-03430; Complaint, *Fernandez v. Chojnacki*, No. 23-cv-04406, (Dkt. 1); Complaint, *Wiener v. Chojnacki*, No. 23-cv-16573, (Dkt. 1); Complaint, *Lin v. Chojnacki*, No. 24-cv-03725, (Dkt. 4); Am. Complaint, *Nowakowski v. Chojnacki*, No. 24-cv-11565, (Dkt. 1).

significant involvement in the Longwood Property transaction is strong circumstantial evidence that Rixer had knowledge of the conspiracy's "essential scope and nature" and intended to participate in it. *Domanus*, 847 F.3d at 479–80, 482 ("Formal agreement is not necessary; when the acts performed by the alleged members of the conspiracy are unlikely to have been done alone, the court may infer agreement."); *United States v. Volpendesto*, 746 F.3d 273, 284 (7th Cir. 2014) ("As with conspiracy in general, circumstantial evidence that the defendants agreed to participate in the enterprise is sufficient."); *DeGuelle*, 664 F.3d at 205. Plaintiff thus states a plausible RICO conspiracy claim under § 1962(d). Accordingly, the Court denies Rixer's Motion to Dismiss. (Dkt. 113).

## CONCLUSION

For the reasons above, the Court denies Rixer's Motion to Dismiss [45].

_____
Virginia M. Kendall
United States District Judge

Date: September 4, 2025